Ms. Koenig. Thank you, Your Honor. May it please the court, I'm Assistant Federal Public Defender Laura Koenig and I represent Appellant Troy Skinner. There are three issues on appeal in this case and today with my limited time I plan to focus on the first issue and rest on the briefs on the remaining issues absent the court's questions. As it relates to the first issue, the district court should have granted Mr. Skinner's motions to dismiss counts 1 through 9 of the superseding indictment which was a production of child pornography counts. The production aspect of the visual depiction at issue here happened entirely in New Zealand and 18 United States Code section 2251 a does not apply extraterritorially and on the facts of this case it has no domestic application here. The district court thus erred and this court must vacate Mr. Skinner's conviction on count 1. Can I ask you as a preliminary question and maybe lead into another question. A man stands in Canada with a rifle and he shoots across the boundary into Vermont and kills a farmer who he's angry at and Vermont prosecute that man for murder. And I think that leads to the analysis that this court has to do. Well I just want to under that hypothetical as he committed murder in Vermont. It would depend on the language of the statute your honor. Just common law. If it was just common law perhaps so but we're not proceeding under common law. I understand that but obviously the elements of my perpetrator is in Canada and the victim is in the United States and is killed in the United States by a bullet that was launched from Canada. Yes. Okay go ahead I I think that might be analogous here. Thank you your honor and I can appreciate the court's analogy but we have to follow the steps the Supreme Court has laid out for us. No you take it through. And so the first step is we have to look to the evidence that is clearly provided for extraterritorial application in 18 United States Code 2251A. Congress has been very clear that just simply general references to foreign commerce or any person those are insufficient to trigger a finding that there is a clear intent to apply a statute to extraterritorial conduct. R.J.R. Nabisco was clear to say you know it's not enough to think about what Congress would have wanted if the facts had been presented to the court at that or to the Congress at that time but what we have to look at is whether Congress has affirmatively and unmistakably instructed that the statute will do so. Here what we have are general references to foreign commerce and as this court and other courts including the Supreme Court have found that is not sufficient to trigger a finding that there was a clear intent to apply the law extraterritorially. So if that's the case and if in fact there is conduct that happens outside of the United States then we have to turn to step two which is to determine whether or not there is a domestic application here. And in doing that the court has to determine what is the focus of the statute that we're proceeding under. Do you agree that all of these pornography statutes are intended to protect minors and the abuse of minors? So that is the general structure of the act. Yes your honor. And this young lady 13 year old girl in Virginia the entire time the offenses were committed. She was your honor. And so when we look at this court's precedents in talking about what really is the heart of 18 USC 2251a we look at Macaulay and we look at Palomino Coronado which talk about the purpose of the statute at issue in 2251a is the production element. Other statutes whether they're state or federal cover the sexual activity or the abuse that would have been put upon the child but the focus of this particular statute is the production, the creation of the visual depiction, the preservation. That's obviously necessary to bring a defendant in. It was also necessary that the man in Canada pull the trigger. That was the production of the thing. The question is what was the target of the crime? Who was being protected by the crime? And where was that person injured? In this case the child was totally in Virginia, was injured in Virginia. The pictures were taken of her while she's in Virginia and then they were put on the internet or wherever they went. And I hear the point and obviously the Child Protection Act is designed to protect children. That's a given. But what we're looking at is this particular statute as opposed to say 2422 or possession of child pornography. There are other statutes that may cover other aspects of this case or that could have covered other aspects of this case but the government chose to proceed under 2251A. And when we're looking at what makes that a crime, we're focused on the defendant's actions. Using, enticing, persuading those verbs as well as the production of the child pornography itself. When I think of 2251A, I think of sexual activity plus. It's got to be the sexual activity which is the harm to the crime here. All right, so help me understand. So hypothetically, if I accepted your idea that the sort of focus here is production, why in a, and maybe it's different in a sort of old analog world, but why in a digital world wouldn't we think about the production of a depiction when it's being done by video chat on a computer system like a wire? It's being done on both ends, right? That like, you're not producing a depiction without both the camera on one side and a recorder on the other side to oversimplify, you know, the mass series of tubes that happen in between, right? So if you're right that it's production and not sort of focused on the victim, why do I think that this doesn't look like the sort of interstate wire cases or foreign wire cases where we sort of say, yes, but there's conduct on both ends? Yes, Your Honor, and I think that there is a, the way that I am asking the court to think about this is when we look at the indictment, the superseding indictment charged in this case, the creation of the files, the images, the video images, the digital images. The indictment definitely has to focus on the defendant's conduct because that's what a crime is, right? But we look not at just that, right? We're looking at what the focus of the statute is. It's a different question than what the indictment charges, right? And so we look at the focus and you've suggested to us, and there are lots of options, but you suggested it's production or also transmission, right? Because it's production or transmission if we're looking at the statute, but let's stay on production. And the question is where's the conduct that relates to that focus? And to say that the production of this is only at the receiving end of the Internet and not at the start end of the Internet seems to me to miss the idea of how the Internet works. And I appreciate that, Your Honor, and I think if the government had charged this under a theory that the live transmission was the specific conduct that violated the crime, perhaps that would be a question that I would need to spend more time with Your Honor on. Well, this one's even clearer because the statute says all those verbs, uses, persuades, induces, entices any minor to engage in sexual conduct, that type of thing, with the intent that such a minor engage in sexually explicit conduct for the purposes of pornography, of producing persuade the minor to engage in sexual conduct for the purpose of being photographed. Yes, Your Honor. And all of that took place in Virginia, right? But it is all a but-for. Every time we have a case in which there is some conduct that happens in the United States and there's some conduct that happens extraterritorially, there will always be a but-for causation problem, essentially, because but-for the two knowing each other, there would not have been this issue. But-for the fact that computers existed on both ends, there would not be the issue. And what we think we have to focus on is here the government charged this as a production of tangible recordings. That is how this case was charged. That conduct, that recording, the decision to hit record on the Discord chat and to make a preserved copy of their conversation, that happened in New Zealand. It couldn't have happened with a-and that's the same thing with a wire, right? You say, like, the decision to receive the wire, right, only happens on one end. But-but our case law, I think, is pretty clear that when we look at a wire, it's both ends, right? Because without one end, you don't have the other. And it's true, you can send a wire that's never received, all right? Well, that-that probably means the end doesn't work. And if this was allowed, you know, a video that was sent and he had his computer off, right? Okay, I understand that. But where you've got two ends, right, the-what they're alleged here is that-is to do all these things to wit, a video named-with this file name, right? But how was that produced? Like, it takes two to tango, right? I mean, in this depiction context, to produce this depiction, right, it can't happen with just one. It absolutely takes two to tango, Your hypothetical in which the minor, let's say, was on a military base in New Zealand, right? I'm not sure of all that-the legal ramifications, and I don't want to... Don't complicate this any more than you have to. But let's imagine that there was some-some basis where the two of them are in the same room. That conduct between him observing her is what I am submitting to the court is what happens in Virginia, the observation. But it is the creation in this case as it was charged. Had the government under-operated under a theory of live transmission that that was what the criminal conduct was here, we might be having a different discussion. But because they charged the creation of the video... The creation had to be in Virginia. The camera, the-the transmission of a real person onto some film or text or digital data occurred in her room in order to facilitate the communication, yes, but there was nothing-there's nothing in the record that indicates that there was something that was... But it's her camera on her device that did-that took the picture. Yes, Your Honor, but there's nothing that indicates in the record at all that there was a preserved copy on her hard drive or anything like that. No, no, it was clearly pulled up into the internet then and it's all over wherever he transmitted it. But the fact is you were focusing on the word production so heavily and ignoring her and her conduct and necessities of her being complicit or yielding to the persuasion and actually taking the picture of herself. She has the camera in front of her and- and he's at the other end watching. And-and again, Your Honor, I submit to the court that if this case had been charged under the live transmission theory... So can I just ask you about that, right? Because the indictment charges live transmission too, right? And so help me-help me understand because where it says, and for the purpose of transmitting a live visual depiction. And then it says to wit at the end of each count, specifically the creation of a preserved video or image file. And so that's where I think... But that's-but it's both, right? That's evidence of a live transmission, given the facts here, and it's evidence of the production of a physical copy. So-so that file, that to wit is not a language, right? The to wit is to say, like, what-which count are we talking about? What are we talking about this one? What do we know about that? This was a recorded version of a live transmission. So it's both production and live transmission. I'm not sure that this makes a lick of difference, right? But I don't understand your argument that the indictment is limited to production. It is production and live transmission. Because we know in this case that he is both a depiction but evidence of a live transmission. It is the evidence of a live transmission, Your Honor, but that-it is the production of that recording that is the conduct that was criminalized in this case. And that's my position on that issue. I think that... If you're wrong about that, do you-do you concede you lose? I may, Your Honor. And so one other thing that I want to bring to this court's attention is that the government has cited the Harris case in in talking about that this court could skip over essentially the first step of deciding whether or not this case-the court has to decide the first issue of whether the statute applies extraterritorially. And that is not the case. This court must proceed as the Supreme Court has directed through step one to decide whether or not there is a clear indication that it applies extraterritorially before getting to the domestic application. What-why is that again? The Morris-that Morrison-Harris relies on Morrison and it's a bleak reference essentially in Morrison. But Harrison talks about when you have a special case essentially, right, that-that the analysis of the first step would be so complicated and-and overbroad that this court doesn't want to wade into the morass where there's a clear domestic application. We don't have those facts here. In Harris, the case- No, no, but you just said we have to and that's what I didn't understand, right? Like I mean if we found there was a domestic application, it just doesn't matter. Step one is simply irrelevant. But that's not the case, Your Honor, unless this is an unusual circumstance that the court should not go through the analysis. That is what the Supreme Court said in Morrison that the court has to go through-I'm sorry, are there-What's the logic, Your Honor, I believe is that but for the court finding that there is an extra-there is no extraterritorial application, we wouldn't get to the domestic application issue. That is not a question that this court would be asked to answer absent a fact-What if we say the-the extraterritorial issue is too complex and nuanced and we think that it can be resolved under the domestic standard? This court could say that but I don't think we have a factual basis to do so here as the court did in Harris where the court would have to analyze subsequent amendments to the to the statute and whether or not whether or not there was a clear intention that it was to apply extraterritorially. It is clear that there is no language in 2251a and no references to any other statutes that apply and I see my time is out and I'll reserve the rest of my time. Thank you. Bichara? Good morning or it might be afternoon at this point. May it please the court, Jacqueline Bichara for the United States. There are two approaches the court can take to resolve this case but either approach confirms that 2251a properly applies to the defendant's use of an American child on American soil to the text legislative history and purpose of the statute provide a clear indication that 2251a applies extraterritorially but in this case the court can simply follow its precedent in Harris and resolve the case at Nabisco step two because this case involves a permissible domestic application. Can you try to explain for me? I'm a little bit lost why the necessity of the sequential analysis. Why would we have to determine that the does not or does is by its text is extraterritorial when there it applies domestically? Your Honor, the court is not required to proceed in sequence. Both the Supreme Court in Western Geco and this court in Harris said that the court has discretion to begin at step two in quote appropriate cases. My colleague discussed unusual circumstances but that text is nowhere in either of Western Geco or Harris. She also suggested that Harris is distinguishable because the court had to consider the potential effect of later amendments on this court's existing precedent but that was not the case in Western Geco, right? The court was just deciding whether a provision of patent law... Before you turn to step two, can you tell me, assuming we were going to decide step one in the sort of normal process, how you distinguish LBAS? I mean which sort of addresses this argument that these jurisdictional hooks can't establish extraterritorial application. A few points if I may, Your Honor. So I understand that the court's concern about sort of general references to commerce and the same concern my friend identified but we need to look at that in context, right? So starting with Aramco and Morrison, what the Supreme Court was saying it was the petitioners in those cases were going outside of the substantive provisions and looking at overall definitional provisions that applied to Title VII in Aramco and to the Securities Exchange Act in Morrison and that's where the Supreme Court developed this reasoning that okay a passing reference to commerce, a generally applicable definition of commerce... But LBAS expands that, right? Right. And I would say that those statutes are distinguishable from what we have here because it's not a generic definitional provision that's applicable to an entire statute and it's more than an isolated reference. It looks like it looks like the wire fraud statute, right? It's like in transmit in foreign commerce is the LBAS language-ish, right? And it sort of same language appears here. Now it appears three times maybe but I don't see how that makes a difference in this statute. We know that Congress amended the statute in 2008 to add two more references to foreign commerce so this is something that Congress was thinking about and I think there are other indications beside the text of the statute. You believe we know... I gather based on that your main argument is that this is extraterritorial? I think in this case the court can simply hold that this is a domestic application because the focus of the statute is on preventing harm to the child. The defendant has conceded it is undisputed that at all times the minor was located in Virginia when she received the defendant's communications and when she assented to engaging in sexually explicit conduct. Can you talk to me, since you've got views on this, what the right unit of prosecution is under 2251? So imagine the scenario, forget the extraterritorial piece of this, but imagine the scenario where I used two minor victims to create one picture in one moment, right? It's an instantaneous, so it's one moment, one picture, two minor victims involved. Can I be charged for two separate offenses as the appropriate unit of prosecution or would that be multiplicitous? Your Honor, I have to admit that this is not a question that I've thought about. Totally fair. So it sounds like I would think one picture would be one count, but again I haven't thought about that. I don't have a case to cite to you off the top of my head, so I'm happy to provide supplementary... No, no, you're fine. If I could respond to a couple of the points at the step two analysis, I know that my friend suggested that the focus is on the defendant because the statute uses this for the purpose of specific intent language. I think that's the wrong way of framing the focus for three reasons. First, it's just inconsistent with Paris, right? The court was looking at 2420 PE, which is similarly worded. It prohibits enticing or coercing a minor to engage in prohibited sexual activity, and the focus is on where the child is when she's coerced into sexual activity. It's not on where the defendant is located when he entices or induces or coerces her. The second point follows just from the text of the statute. My friend suggested that that we should look at where the defendant was because of this purpose element, but if you think about cases like Morrison, where the court said Congress does not just prohibit deception by itself, right? What's prohibited under the Security Exchange Act under Section 10B is deception in connection with the purchase or sale of a security, and similarly here, 2251A doesn't prohibit using or persuading for the purpose of producing a visual or coercion, and 2251A tells us that the object is any minor. The third point I'll just note for the court is that the defendant's framing is just inconsistent with what Congress has been saying about the child pornography laws since 1977. We detailed that history at pages 37 to 39 of our brief, and I'll just highlight in 2003 in the PROTECT Act, Congress made the specific finding that production of the sexual abuse of a child. So it's unambiguous that what Congress has been concerned about over the decades is preventing child abuse, not on this sort of mechanical act of taking a picture or recording a video. Can you respond to your colleague's argument that each of these counts, though it indicates both borrows the indictment in some way to eliminate the language transmitting a live visual depiction? Can you understand the argument that's being made here? What she's saying is you've charged both, right? So the indictment charges both producing a visual depiction and transmitting a live depiction. And her argument, as I understand it, is that yes, that's charged, but the to wit, which is the sort of last line, means that it's only the production that you're charging. I don't think that's correct. Help me understand why that's not correct. The government frequently uses conjunction charging language because it can support either theory of liability. And the fact that we've identified a specific video file doesn't mean that the video file doesn't satisfy both of those means. If the court has no further questions, we ask that you affirm. I do. Yes. What about the enhancement? Contact? And there was an enhancement for use of a computer wasn't it? I think there was. And what about, is this the same thing? This extra one? The sexual contact? Yeah. I mean, because they were, they weren't in the same room. They were in the same country. What was the, first of all, you don't know whether or not you had the standard one, use of a computer. I think that would have applied. Yes. Yeah. Let's assume that. And what about the, the, the, the, this extra one here says contact. Okay. What I'm asking, isn't that the same thing? Because here there was no real contact. Was it physical contact? It was physical contact, the minor masturbating, which every court of appeals to have addressed this issue, that masturbation is sexual contact under the guideline. Right. And, but it's normally the contact that the other person makes, right? Not under this guideline, given the way that Congress wrote 2246. I know it weren't brought in, but in the other contact, the one that you don't know whether it's there, the standard, that deals with using a computer to further contact, which would include the, the masturbation you talked about and things like that, that's not real touching. Isn't this, isn't this duplicitous? I mean, it's, it covers that. Doesn't it cover that? In this instance, because you don't have a physical contact, haven't you already accomplished whatever that a contact is by either persuading someone to contact or touch themselves through the computer? Isn't that use of the computer? He's already been enhanced for that. That covers the contact in this case, doesn't it? The use of the computer is one aggravating element, but the multiple videos in which he induced the minor to masturbate and recorded those videos, that's a separate enhancement. No, but it covers it. That enhancement, that enhancement talks about use the computer to do those kind of things. All those things you talked about. And now you're putting another layer. There could be, couldn't there be pornography without contact? Could there be? I guess there could be. But the point though is that it's already a, I guess the sentencing commission, I guess they're looking at this, but I don't know how you can really accomplish this kind of child pornography without a computer anyway. It's almost like somebody being charged with having a firearm and then you enhance it because they had a firearm. Well, you can't, you can't, you know, you can't commit the crime without a firearm and then you're in a, enhancement is something extra, right? You put the extra up there is you accomplish this by using a computer, which includes contact and the kind of things you talk about. Then you add another one on and say, oh, contact. I mean, at some point, the rule of leniency doesn't even exist anymore because we, you know, obviously when these, I think when you have things that protect children in a situation like that, we lose sight of what is the sense of requirement of what the rules occur, not just, you know, vindication of what we consider to be a, and I agree with you, a distasteful act. But isn't that, isn't that piling on? We would call it when I was growing up, he's already down, but you two or three other defensive linemen jump on top of him. Isn't that piling on? Yeah. No, your honor, there are still... How much time did he get? How much time did he get? 252 months. 20 years. 21 years. 21 years for using a computer, right? I mean, I'm saying that's a whole lot of time, isn't it? Well, the court also had to consider the aggravated nature of this offense in that he flew from New Zealand to the United States and tried to kidnap a child. Wasn't he enhanced for that? Was that enhanced? Or you didn't say that's... No, I'm saying... Was he charged? ...assessment in imposing what is still a below-guidelines sentence. Okay. But you don't even know whether or not they used a computer here, right? You just assumed that it does. Yes. But you said even if it did, it's not duplicative. It's not duplicative because, well, to go back to your... Can I just ask you a question that might help add to the discussion? Computer contact is a form of contact, but the sexual contact being referred to here is the touching in a sexual manner. And the courts have held that masturbation is a sexual contact. There are other statutes if you have contact with the other person, but that's not here. This one is... So the enhancement is for inducing her into sexual conduct that involves sexual contact. That's correct. Computer is a different enhancement because it's a form of contact. Yes. Is that what your position is? That's correct. Yes. Okay. That's your position? Okay. Now, I want to try to get you to answer the question this time. When you do it with just a computer, what kind of contact is that? That's not sexual contact. What is it? Communication. Communication? You mean the enhancement is because you communicated with someone? Obviously, you can't commit the crime without communicating with someone. It's called an enhancement for a reason. It says use a computer, and part of that is contact. I want you to tell me what contact is it then, other than... I guess maybe you say that's the answer. As long as you talk to someone, that includes... That's a different aspect of it because it's using a computer, and there's different ways to use the computer. All I'm asking you is, in this case, they use a computer for contact. I grant you that. But then they have a separate enhancement that say contact, which also includes, well, you entice someone to masturbate. Well, that would be included in the other one. You use a computer to contact someone, and you persuaded them in that contact, a child to engage in masturbation. Why is that not covered by that enhancement? Mr. Your Honor, the separate enhancements drive at two separate issues, right? So one is that the commission has determined that child pornography offenses that are facilitated by the use of a computer are more aggravated, and that's a policy judgment. Of course, the defendant has never attacked the application of that enhancement, so it's not before the court. There is a separate enhancement for offenses that involve sexual contact, and that's what's at issue here. And of course, that is concerned with some kind of sexual contact, something that is of an aggravated nature, but that's separate from using a computer to commit the crime. Go ahead. At this point, if the court has no further questions, we ask that you affirm. Do you have it? I'm sorry. I'm just trying to make sure I'm following. The sexual contact enhancement is which one? That's 4B1.5B1. I'm just trying to find... 4G2.1B2A. Oh, I'm sorry. Say that one more time. 2G2.1B2A. And so that's part of the base offense calculation. I'm with you. Okay. So it's not a specific offense characterization. It's part of the base offense. I don't have the guideline provision in front of me. I'm just trying to figure out... Yes. Like I'm on the PSR and I'm trying to figure out where that... Thank you very much. It raises the level 32 to 34. So... Sorry. But I guess I'm not... I'm not totally certain where I'm seeing that being applied. Maybe I'm... What am I missing? In the PSR? Correct. So the government objected after the... Thank you. That's what I'm looking for. So it was added after the PSR? Yes. All right. Thank you. Sorry. Okay. I guess the last call for questions. All right. Thank you, Your Honor. Last call? You're telling us last call? We're finished. Go ahead. Just a few pre-points, Your Honor. As it relates to the court's last questions about the specific offense characteristic, if this court were to find that there was an incorrect application of the sentencing guidelines, the government has argued that there would have been no harm to Mr. Skinner, and that is in direct conflict with this court's decision in Morehouse from last year. If there is an incorrect calculation of the guidelines, then that is the incorrect starting point for the... Right. But help me understand. I readily concede I may just have sort of missed this. But help me understand the argument that because there's a computer used, that that covers the same contact as sexual contact, right? In theory, you could use a computer to just get a nude photograph, right? And so that would be a computer without any contact. And so I'm not sure. Maybe I'm totally confused. So please help me if I'm not following. That's okay. I think what I understood Chief Justice Gregory to be saying is that because this contact, this communication in which there was the depictions happened entirely on the computer, but for the use of the computer, that would not have happened. And so therefore, the use of a computer enhancement, which was separately applied, would potentially constitute double counting. I believe... But I don't... I guess I just don't remember that argument. But so why would... But the but for doesn't mean double counting, right? Because you can use a computer to have contact, that is masturbation or otherwise, and you can use a computer to have no contact, that is a nude photograph. And so it seems to me, even if we're looking at that question, the computer question and the contact question are totally different. So I did not raise that. We did not raise that issue in this case. I think it is a good argument that Chief Justice Gregory has made, but it's not something that we briefed or raised below. But I want to turn the court's attention back to the language on the first issue of why this court has to engage in the two-step analysis for the extraterritorial discussion. If we look at the Harris case at 559, which is quoted... Why does this matter to you? I'm totally perplexed by this. Because it's an easy question, Your Honor. The court can't skip over the first question if it's an easy one. And I think that the government is... Can't or shouldn't, right? Do you really mean cannot? Or do you mean should not? Maybe that's... Maybe if you said should not, I understand that argument. But the cannot argument is the one that I'm having trouble with. Well, what the Supreme Court has said in RJR Nabisco is that ordinarily, courts should proceed in sequence, addressing step one first and step two only where necessary. And so the Supreme Court in RJR Nabisco specifically identified that there would be an appropriate case to go directly to step two if the case involved a step one inquiry that involved difficult questions that would not change the outcome. Here, that's not what we have. We have a very easy question that this court has basically already decided in Elbaz. And so... We should read that portion of RJR as a command, that that's the only time in which you can skip step one. I don't have any other examples that the courts have found that they would be able to step over aside from that circumstance. I don't understand the logic of that. I hear your language, what you're saying. And it seems to me the court left a fairly large opening there for the court to make a determination. But I don't understand the sequential logic. In other words, the statute could say on its face, this applies extraterritorially. Or the statute would say nothing of the kind, but would apply it. I mean, there's not even a... If you find that it's domestic, a violation, you don't even have the extraterritorial issue before you. That's my problem. I think that the reason that there is this two-step process, Your Honor, is because there is a presumption against the statutes applying extraterritorially. Fair enough. Let's leave that all alone. But the question is, if I have a crime committed where, instead of this man being in New Zealand, he was in Pennsylvania, we wouldn't raise extraterritorially, would we? We would not, Your Honor. So the mere fact that he was in New Zealand, but all the rest was in Virginia, all of a sudden, we have to determine extraterritorially? Yes, Your Honor. Even if we conclude the statute applies, it is a domestic application? Yes, because of the fact that our country has decided, along with many other countries, to respect the boundaries of the laws of other territories within the world. Well, I understand that. But if we conclude that it's a domestic statute, the guy shot from Canada into Vermont, you said that was a Vermont crime? No, I said it would depend on the text of the statute, Your Honor. I said common law because most murder statutes are based on common law. But that's not what we have here. We don't have a common law. And I see my time is up, Your Honor. Well, statute will say it then. My whole point is a murder statute doesn't address extraterritoriality. Murder statute says one who shoots another with a certain amount of mens rea is guilty of manslaughter or second-degree murder, first-degree murder. Well, in that case, Your Honor, if the court was defined that the language was not sufficient to make a clear application of extraterritoriality, then the court would proceed to step two and perhaps, in that circumstance, find that the focus of the statute was on the harm to the victim in the United States. That's not what we have here. So I asked this court to make— understand why, but that's OK. I asked the court to vacate Mr. Skinner's conviction in count one, and I appreciate the court's time. Thank you, counsel. Thank you both for your arguments. We appreciate them very much. I'll ask the clerk to adjourn the court until tomorrow morning, and we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Paul V. Niemeyer, Julius N. Richardson